Richard M. Gulbrandsen, Jr., Esq. #026256
William J. Gulbrandsen, Esq. #027079
**SKOUSEN, GULBRANDSEN & PATIENCE, PLC**
414 East Southern Avenue
Mesa, AZ   85204-4922
480-833-8800
Facsimile 480-833-7146
attorney@sgplaw.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JANE LONG, the surviving biological mother of Danielle Breed, in her own right and as statutory plaintiff on behalf of other claimants,<br><br>                    Plaintiff,<br>vs.<br><br>Keli J. Okopny, as Personal Representative of The Estate of Charles Wallis Haeger, Oakland County (Michigan) cause number 2020-0000396732-DE<br><br>                    Defendants. | No.  CV-20-02211-PHX-DWL<br><br>**RENEWED MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>(Assigned to the Honorable Dominic W. Lanza) |

Plaintiff Jane Long, the surviving biological mother of Danielle Breed, in her own right and as statutory plaintiff on behalf of other claimants, requests that entry of judgment by default be entered against Defendant Keli J. Okopny, as Personal Representative of the Estate of Charles Wallis Haeger, pursuant to Federal Rule of Civil Procedure 55(b).

**Procedural Background**

On December 27, 2020, Defendant was served with a copy of the summons, proof of service, second amended complaint, preliminary order, and notice of availability of a United States Magistrate Judge to exercise jurisdiction. [Affidavit in Support of Motion for Default Judgment, ¶ 2, attached hereto as Exhibit 1] An answer to the second amended complaint was due by January 28, 2021.  No response was served within the time allowed by law nor has the Defendant sought additional time within which to respond. [Affidavit in Support of Motion for Default Judgment, ¶ 3, Exhibit 1] On or about April 23, 2021, John Leader spoke to Keli Okopny and asked her if she

was going to file an answer, she said "no." [Affidavit of John Leader in Support of Motion for Default Judgment, ¶ 2, attached hereto as Exhibit 2] The default of Defendant was entered on April 27, 2021. [Affidavit in Support of Motion for Default Judgment, ¶ 4, Exhibit 1]

### Legal Standard

After entry of a default, a court may grant a default judgment on the merits of the case. *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *3 (N.D. Cal. May 29, 2007); see also Fed.R.Civ.P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980).

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the Plaintiff, (2) the merits of Plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### ANALYSIS OF EITEL FACTORS

**A. Factor 1: Possibility of Prejudice to Plaintiff.**

In *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *3 (N.D. Cal. May 29, 2007), the Court stated: "If the Court were to deny [Plaintiff]'s motion for default judgment, Plaintiff would have no other recourse for recovery," citing *Walters v. Shaw/Guehnemann Corp.,* 2004 U.S. Dist. LEXIS 11992, at *7 (N.D.Cal. Apr. 15, 2004) ("To deny Plaintiffs' motion for default judgment would leave them without a remedy.").

Here, similarly, Plaintiff Jane Long would have no recourse for the wrongful death of her daughter Danielle Breed without a default judgment. Defendant has made it clear that she will not be filing an Answer or litigating this case. [Affidavit of John Leader in Support of Motion for Default Judgment, ¶ 3, Exhibit 2] Therefore, the first *Eitel* factor weighs in favor of granting default judgment.

### B. Factors 2, 3: Merits of Plaintiff's Substantive Claim and Sufficiency of Complaint.

In the present action, Plaintiff alleges that Charles Haegar caused the wrongful death of Danielle Breed. "In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default." A.R.S. § 12-613. In order to prevail, Plaintiff must prove that Defendant was at "fault" for Danielle Breed's death. *See* RAJI (CIVIL) 5th Fault 4 ("If you find that Defendant was at fault, then Defendant is liable to Plaintiff and your verdict must be for Plaintiff."). "Fault is negligence that was a cause of Plaintiff's injury. Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. Negligence is the failure to act as a reasonably careful person would act under the circumstances." RAJI (CIVIL) 5th Fault 1.

A person is grossly negligent under Arizona law if he or she acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result. *Walls v. Arizona Dept. of Public Safety*, 170 Ariz. 591, 826 P.2d 1217 (Ariz. App., 1991), citing *Nichols v. Baker*, 101 Ariz. 151, 153, 416 P.2d 584, 586 (1966). Moreover, under Arizona law, claims for punitive damages survives the death of a tortfeasor and may be pursued against his or her estate. *Haralson v. Fisher Surveying, Inc.*, 31 P.3d 114, 115-119 (Ariz. 2001). Under Arizona law, a person acts with the necessary "evil mind," subjecting him to punitive damages, when he or she is consciously aware of the wrongfulness or harmfulness of his/her conduct yet continues to act, in deliberate contravention to the rights of others. *Linthicum*, 150 Ariz. at 331, 723 P.2d at 680, *Rawlings*, 151 Ariz. at 162, 726 P.2d at 578.

"In considering the [*Eitel*] factors, the Court takes all factual allegations in [Plaintiff]'s complaint as true, except for those relating to damages." *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *3 (N.D. Cal. May 29, 2007) (citing *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir.1987).

Here, Plaintiff properly pled that Defendant caused Danielle Breed's death and should be found negligent for the wrongful death, as well as grossly negligent and subject to punitive damages. As set forth in Plaintiff's Second Amended Complaint, "On or about October 2, 2020, Haeger shot and killed Danielle Breed in the District of Arizona." ¶ 5. "Plaintiff Jane Long is the surviving parent of decedent Danielle Breed under A.R.S. §12-612(A) and brings this action as statutory plaintiff under A.R.S. §12-612(A) and (B)." *Id.* at ¶ 26. On or about October 2, 2020, Charles Wallis Haeger caused the death of Plaintiff's daughter, Danielle Breed, by wrongful act, such that Haeger and his estate are liable to Plaintiff for wrongful death damages under Arizona law." *Id.* at ¶ 27. "Charles Haeger, by shooting Danielle Breed, engaged in conduct that was, at a minimum, a conscious and deliberate conduct knowing or having reason to know that it subjected others . . . to a substantial risk of significant harm." *Id.* at ¶ 41.

In addition, the police report has now been released, finding that Charles Haegar indeed caused the death of Danielle Breed. [*See* Police Report, attached hereto as Exhibit 3]

Plaintiff was and is likely to prevail on the substance of her wrongful death claim, and her Complaint sufficiently pled the facts required to prevail on the merits. As a result, factors two and three weigh in favor of a default judgment.

### C. Factor 4: The Sum of Money at Stake in the Action.

"When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. However, when the sum of money at stake is tailored to the specific misconduct of the Defendant, default judgment may be appropriate." *Twitch Interactive, Inc. v. Johnston*, 2018 WL 1449525, at *8 (N.D. Cal. Jan. 22, 2018) (internal quotations and citations omitted). In Twitch, the Plaintiff sought over $1.7 million in damages. However, the Court noted, "This Court has considerable discretion, however, to tailor the damages as it considers just." *Id.* (internal quotations and citations omitted); *see also Bd. of Trustees of the Sheet Metal Workers Health Care Plan of N. California v. Superhall Mech., Inc.*, 2011 WL 2600898, at *2 (N.D. Cal. June 30, 2011) ("the sum of money at stake in the action is appropriate as it is tailored to the specific misconduct of Superhall"). In Twitch, the Court found that the requested $1.7 million in damages did not weigh against default judgment. Instead, because the court had discretion to determine the amount

4

of damages, the Court held the following: "This factor is therefore neutral, neither weighing in favor nor against the entry of default judgment." *Twitch Interactive, Inc. v. Johnston*, 2018 WL 1449525, at *8 (N.D. Cal. Jan. 22, 2018).

Here, "the sum of money at stake is tailored to the specific misconduct of the defendant." Id. Charles Haegar murdered Danielle Breed, the daughter of Jane Long. He shot Danielle and then took his own life. [Plaintiff's Second Amended Complaint ¶¶ 5-6] The damages sought below, although significant, are "tailored" to Defendant's egregious conduct. Therefore this factor weighs in favor of default judgment. Moreover, this Court has broad discretion in determining the appropriate amount of damages, and therefore, this factor must at least be neutral. *Twitch Interactive, Inc. v. Johnston*, 2018 WL 1449525, at *8 (N.D. Cal. Jan. 22, 2018).

### D.  Factor Five: The Possibility of a Dispute Concerning Material Facts

"The possibility of a dispute as to material facts is remote because the Default Defendants have not defended themselves in this case and there is no indication that they intend to do so." *Weeks v. Fresh-Pic Produce Co., Inc.*, 2012 WL 1815648, at *4 (S.D. Cal. May 17, 2012), *amended in part*, 2013 WL 990827 (S.D. Cal. Mar. 12, 2013).

Here, not only has Defendant failed to provide any defense to date, but Defendant has also averred that she has no intention of filing an Answer or defending the lawsuit. [Affidavit of John Leader, ¶ 3, Exhibit 2] Therefore, it is unlikely that there will be any dispute regarding the material facts in this matter. As a result, this factor weighs in favor of default judgment.

### E.  Factor Six: Whether the Default was Due to Excusable Neglect

"[I]t is unlikely that the default was due to excusable neglect, especially when Plaintiffs served not only the summons and complaint but also the request for entry of default and motion for default judgment, but still received no response." *Bd. of Trustees of the Sheet Metal Workers Health Care Plan of N. California v. Superhall Mech., Inc.*, 2011 WL 2600898, at *2 (N.D. Cal. June 30, 2011); *see also Weeks v. Fresh-Pic Produce Co., Inc.*, 2012 WL 1815648, at *4 (S.D. Cal. May 17, 2012), *amended in part*, 2013 WL 990827 (S.D. Cal. Mar. 12, 2013) ("the default is not the result of excusable neglect, since the Default Defendants were served on July 18, 2010, and have yet to make an appearance in this case"). *United States of Am. v. Dennis J Sprenger, et al.*,

2021 WL 3406340, at *4 (D. Ariz. Aug. 4, 2021) ("Because Sprenger and Bank of Arizona were properly served, it is unlikely that their failure to answer was the result of excusable neglect.").

Here, Defendant was properly served but has not responded to the lawsuit. In addition, Defendant has made it clear that she will not be filing an Answer or litigating this case. [Affidavit of John Leader in Support of Motion for Default Judgment, ¶__] Therefore, this factor weighs in favor of granting default judgment

### F.    Factor Seven: The Strong Policy Favoring Decisions on the Merits

"Although default judgment is disfavored, a decision on the merits is impractical, if not impossible, when the defendant takes no part in the action." *Weeks v. Fresh-Pic Produce Co., Inc.*, 2012 WL 1815648, at *4 (S.D. Cal. May 17, 2012), *amended in part*, 2013 WL 990827 (S.D. Cal. Mar. 12, 2013). "Although federal policy may favor decisions on the merits, Federal Rule of Civil Procedure 55(b) permits entry of default judgment in situations such as this where defendants refuse to litigate." *Walters v. Shaw/Guehnemann Corp.*, 2004 WL 1465721, at *4 (N.D. Cal. Apr. 15, 2004).

Here, Defendant has expressly refused to litigate the action. Although decisions on the merit are preferred, there must be a mechanism to resolve cases when a party refuses to participate, hence the advent of Federal Rule of Civil Procedure 55. Here, Defendant refuses to litigate the case or participate in the process. Therefore, under the *Eitel* factors, default judgment is appropriate.

In sum, the *Eitel* factors on balance favor entry of default judgment. There is substantial prejudice to Plaintiff if default judgment is denied. There is no dispute concerning the material facts. Defendants have refused to litigate this action after being properly served with the summons, complaint, and notice of default. The default was not the result of excusable neglect. And this Court determines the proper amount of damages. Therefore default judgment should be granted in this case.

## DAMAGES

### A.    The Court Does Not Need to Hold a Hearing to Award Damages.

Although the damages are not for a sum certain in the present case, this Court may still award damages without a hearing. "In instances where the amount of damages is not certain, the court may hold a hearing, but is not required to do so as long as there is a basis for determining damages for purposes of the default judgment. In making an independent determination, the court may rely on detailed affidavits or documentary evidence." *Ullico Cas. Co. v. Abba Shipping Lines, Inc.*, 891 F.Supp.2d 4, 7 (D.D.C. 2012); see also 2 Gensler, Federal Rules of Civil Procedure: Rules and Commentary, Rule 55, at 119 (2018) ("A live evidentiary hearing on damages is not always required. Rather, the hearing requirement can be satisfied by the submission of affidavits or other proper documentary evidence if doing so will create a record sufficient for the court to decide the matters before it.").

### B. Damages for Wrongful Death are Subjective and Personal.

"In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default." A.R.S. § 12-613. General wrongful death damages are, by nature, subjective and personal to the individual seeking them. *Backus v. State*, 220 Ariz. 101, 105 (2009).

### C. Jane Long's Damages are Substantial.

Jane Long is the natural mother of Danielle Breed. [Affidavit of Jane Long ¶ 1, attached hereto as Exhibit 4] Danielle was born on January 12, 1986 in Tucson Arizona. [Affidavit of Jane Long ¶ 2, Exhibit 4] Jane describes Danielle as a great baby who was very smart. [Affidavit of Jane Long ¶ 3, Exhibit 4] Danielle was very friendly and kind to everyone. [Affidavit of Jane Long ¶ 4, Exhibit 4] Danielle attended Helen Keeling Elementary School. [Affidavit of Jane Long ¶ 5, Exhibit 4] Helen Keeling Elementary School wanted Danielle to skip a grade, but Jane insisted that she stay with kids her own age. [Affidavit of Jane Long ¶ 6, Exhibit 4] Danielle's Kindergarten teacher said that if they gave grades for socializing, Danielle would get an A in that as well. [Affidavit of Jane Long ¶ 7, Exhibit 4] As a kid, Danielle loved horses and attending rodeos with her mom. [Affidavit of

Jane Long ¶ 8, Exhibit 4]

Danielle attended Tucson Amphitheater Middle School and High School. [Affidavit of Jane Long ¶ 9, Exhibit 4] Danielle was a talented musician and played violin in the Tucson Amphitheater High School Orchestra. [Affidavit of Jane Long ¶ 10, Exhibit 4] Danielle loved sports and played soccer for Tucson Amphitheater High School. [Affidavit of Jane Long ¶ 11, Exhibit 4] Danielle received a scholarship to San Francisco College and her goal was to become a schoolteacher for handicapped children, but she never had the opportunity to finish. [Affidavit of Jane Long ¶ 12, Exhibit 4]

Danielle was an animal lover. [Affidavit of Jane Long ¶ 13, Exhibit 4] Danielle sponsored an elephant and giraffe in Africa. Below is a photo of Danielle with "her" elephant. [Affidavit of Jane Long ¶ 15, Exhibit 4]



In perhaps Jane's final act of love for her daughter Danielle, Jane inherited Danielle's guinea pig, lizards, fish, and dogs when Danielle passed away. [Affidavit of Jane Long ¶ 13, Exhibit 4] One of Danielle's dogs passed away shortly after Danielle's death. In honor of Danielle and her great love for animals, especially her precious dog, Jane decided to include the dog's ashes in the urn with Danielle's ashes. [Affidavit of Jane Long ¶ 14, Exhibit 4]

Danielle loved humans as well as animals. She was always willing to help others. [Affidavit of Jane Long ¶ 18, Exhibit 4] Danielle performed service with Habitat for Humanity in Phoenix, helping build homes for those in need. [Affidavit of Jane Long ¶ 19, Exhibit 4] When Danielle's brother Patrick (a single father) moved to Colorado Springs, Colorado, Danielle went with him to furnish and decorate his house and help him move in. [Affidavit of Jane Long ¶ 20, Exhibit 4] Danielle had the opportunity to visit Africa with the Scottsdale Bible Church. [Affidavit of Jane Long ¶ 16, Exhibit 4] Danielle's heart was touched when she had the opportunity to meet the children she sponsored. [Affidavit of Jane Long ¶ 17, Exhibit 4]



Danielle continued to develop her talents as an adult and started learning to play the piano about 10 years ago. [Affidavit of Jane Long ¶ 21, Exhibit 4] Danielle worked as a bartender/waitress and set a goal to own her own restaurant one day. [Affidavit of Jane Long ¶ 22, Exhibit 4] After working hard and saving money, Danielle accomplished her goal a few years ago when she became the owner/operator of Tipsy Coyote Bar and Grill in Scottsdale. [Affidavit of Jane Long ¶ 23, Exhibit 4]

Danielle and Jane loved spending time together, especially vacations and holidays. [Affidavit of Jane Long ¶ 24, Exhibit 4] Just before COVID, Jane and her sister rented a cabin in the White Mountains, and Danielle went on vacation with them, along with her siblings, cousins, nieces, and nephews. When Danielle was there, she went golfing for the first time. She fell in love with golf and started golfing with friends after that experience. Here is a photo from their time together at the cabin. Included in the picture is Danielle, her mother Jane, her brother Christian, her aunt Patty, and her cousins. [Affidavit of Jane Long ¶ 25, Exhibit 4]



Danielle and Jane were very close. They loved spending time together and attending Diamondbacks games together. [Affidavit of Jane Long ¶ 26, Exhibit 4] But nothing was better than spending holidays together. Danielle was very close with Jane's extended family, and they would rotate where they would spend Thanksgiving and Christmas together between Danielle, Jane, Jane's sister, and Jane's parents. [Affidavit of Jane Long ¶ 27, Exhibit 4] Below is a photo of Danielle with her nieces and nephews:



Jane has been completely devastated by the loss of her daughter to this senseless tragedy. No parent should ever have to bury a child. The loss of Jane's precious daughter has been greater and deeper than words can ever express. [Affidavit of Jane Long ¶ 30, Exhibit 4]



Holidays are especially hard. Last Thanksgiving and Christmas were extremely difficult without Danielle present. [Affidavit of Jane Long ¶ 27, Exhibit 4] Even the day of the week is difficult—Fridays are hard for Jane, as Danielle passed away on a Friday. [Affidavit of Jane Long ¶ 29, Exhibit 4] But more than Fridays or holidays, the hardest part is not hearing Danielle's voice. Danielle would call Jane on a regular basis just to chat and make sure she was okay. How Jane misses those phone calls and hearing her daughter's voice. [Affidavit of Jane Long ¶ 28, Exhibit 4]

### D.     Conclusion.

Revised Arizona Jury Instructions (Civil) 5th Personal Injury Damages 3 sets forth the recoverable damages in wrongful death claims:

"If you find Defendant liable to Plaintiff, you must then decide the full amount of money that will reasonably and fairly compensate Plaintiff for each of the following elements of damages proved by the evidence to have resulted from the death of decedent.

1.   The loss of love, affection, companionship, care, protection, and guidance since the death and in the future.

2.   The pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future.

3.   The income and services that have already been lost as a result of the death, and that are reasonably probable to be lost in the future."

Obviously, there is no amount of money that properly compensates Jane Long for the loss of her daughter. "The loss of a loved one is not measurable in money. Human life is, indeed, priceless. Yet the very purpose of the lawsuit for wrongful death is to fix damages in money for what cannot be measured in money's worth." *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983). In *Ahmad v. State*, 245 Ariz. 573, 432 P.3d 932 (App. 2018), Division One upheld a jury verdict of $15 million per parent for the wrongful death of their son - as here, these were strictly

noneconomic damages.

Here, Plaintiff requests that this Court render a judgment for compensatory damages in the amount of $5,000,000 to Jane Long for the wrongful death of her daughter Danielle Breed.

DATED this 13th day of August, 2021.

**SKOUSEN, GULBRANDSEN & PATIENCE, P.L.C.**

By: _____
Richard M. Gulbrandsen, Jr.
414 East Southern Avenue
Mesa, AZ   85204-4993
Attorneys for Plaintiff